FIRST SAVINGS BANK, F.S.B., Plaintiff,

v.

FIRST BANK SYSTEM, INC. and First Bank, fsb, Defendants.

No. 95–4020–SAC.

United States District Court, D. Kansas.

July 5, 1995.

Thomas H. Van Hoozer, William A. Rudy, Robert D. Hovey, John M. Collins, Hovey, Williams, Timmons & Collins, Kansas City, MO, for First Savings Bank.

Brett C. Coonrod, Edward W. Mullen, Thomas M. Deacy, Deacy & Deacy, Kansas City, MO, Peter Lancaster, Dorsey & Whitney, Minneapolis, MN, Stephen R. Baird, Minneapolis, MN, for First Bank System, Inc., Metropolitan Federal Bank.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendants' objections (Dk. 178) to the magistrate judge's orders filed June 12, 1995, (Dk. 156) and March 30, 1995 (Dk. 100). In the March 30th order, the magistrate judge found that the defendants had not carried their burden of proving the applicable privileges. (Dk. 100). In the June 12th order, the magistrate judge overruled the defendants' motion to reconsider the earlier order. (Dk. 156).

The defendants argue the magistrate judge erred in granting the plaintiff's motion to compel production of documents they claim are protected by either the attorney-client privilege or the work-product doctrine. The defendants specifically contend that the magistrate judge based his decision on mistakes of fact, that mitigating circumstances exist to explain the defendants' tardiness, that the defendants acted in good faith at all relevant times, and that the defendants' conduct does not warrant the draconian consequence imposed by the magistrate judge.

## STANDARD OF REVIEW

The district court employs a clearly erroneous or contrary to the law standard when reviewing a magistrate judge's ruling on nondispositive pretrial matters. 28 U.S.C. § 636(b)(1)(A); *Continental Bank, N.A. v. Caton*, 136 F.R.D. 691, 693 (D.Kan.1991); *see Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir.1988). The clearly erroneous standard requires the district court to affirm the magistrate judge's order unless it has the definite and firm conviction from all the evidence that a mistake was made. *Ocelot Oil*, 847 F.2d at 1464.

## PROCEDURAL BACKGROUND AND RELEVANT FACTS

On January 31, 1995, the plaintiff filed a verified complaint alleging service mark infringement, unfair competition, and false designation of origin. (Dk. 1). On the same

day, the plaintiff moved for a preliminary injunction. Early in February of 1995, the parties agreed to consolidate the preliminary injunction proceedings with a trial on the merits. (Dk. 10). The parties further agreed that pending trial the defendants would refrain from using the name "First Bank" in advertising, exterior signage, or in answering telephone calls. (Dk. 10). The parties further requested that the matter be set down for trial on March 13, 1995. (Dk. 10). A week later, a scheduling order was entered that, *inter alia*, shortened response times to requests for production to fifteen days and set a trial date of April 3, 1995. The plaintiff served by mail and facsimile the first request for production of documents on February 14, 1995. On March 1, 1994, the magistrate judge entered an order that required all responses, including objections, to outstanding requests for production to be served no later than March 2, 1995, and that scheduled a telephone conference for March 3, 1995, to hear arguments on any disputes arising after review of the responses. The magistrate judge also directed counsel to confer in an effort to resolve any disputes prior to the telephone conference.

Document production began March 3, 1995, as ordered, and continued with delivery of copies on March 6, 1995. The plaintiff served defendants on the afternoon of March 6, 1995, with a list of documents it was withholding as privileged. The plaintiff accompanied the list with a cover letter that said: "We presume that you will provide your list of withheld documents prior to the commencement of our deposition discovery." Depositions were scheduled to commence the next day on March 7, 1995. Prior to the first deposition on the morning of March 7th, the plaintiff's counsel orally repeated his request for a privilege list. At that deposition, the defendants were represented by a younger lawyer who had little prior involvement in the case and no apparent involvement in document production issues. The younger lawyer said he would make a note of the plaintiff's request. Before filing the motion to compel, the plaintiff's counsel made no further requests for a privilege list nor brought up the subject of privilege lists with the defendants' attorneys who were appear-

ing in subsequent depositions and who the plaintiff's counsel knew were principally responsible for handling document production matters.

On March 16, 1995, less than ten business days after the plaintiff produced its privilege list and requested the same from the defendants and less than thirty days after the plaintiff served the defendants with its requests for production, the plaintiff filed a motion to compel. (Dk. 50). This is not to say that the plaintiff filed its motion prematurely, for its proposed pretrial order and witness and exhibit lists were due on March 17, 1995. Along with the motion and supporting memorandum, the plaintiff filed a certificate of compliance stating it had made "repeated attempts to resolve the dispute" and "repeated attempts to obtain a listing of the withheld documents." (Dk. 52).

In apparent compliance with the magistrate judge's request, the defendants filed their written response to this motion the next day on March 17, 1995. The defendants accompanied their response with their counsel's affidavit. Ronald Brown averred that the defendants had "never refused to prepare and produce a privilege log." He further averred that had the plaintiff contacted them before filing the motion to compel they would have told the plaintiff that a log was being assembled. He also explained that over the last three weeks the defendants had used the equivalent of three attorneys and 20 paralegals and assistants working full time just to accomplish the document production. In view of the "massive quantities of documents to locate, review for responsiveness and privilege," Brown offered that they were not able to produce a privilege log upon the plaintiff's request. Finally, Brown committed to producing as much as they had of a privilege log by March 20, 1995.

The plaintiff filed a reply on March 20, 1995. On that same day, after the close of business, the defendants sent the plaintiff by facsimile a partial privilege log. On March 22, 1995, the magistrate judge heard oral arguments on this motion and requested the defendants to furnish the court with a copy of this privilege log. On March 27, 1995, the

magistrate judge orally ruled on the motion and filed its order memorializing the ruling on March 30, 1995.

In his March 30th order, the magistrate judge found the defendants were untimely in producing the privilege log on March 20, 1995. In support of that finding, the magistrate judge noted that the privilege log was not provided when the written responses were served, when the other documents were produced, or when the plaintiff had requested the log. The magistrate judge further commented that the defendants in responding to the motion to compel had not proffered the log nor suggested when the log would be served:

> Defendants did not seek an extension of the time from the court within which to provide the log. Although the parties were continuing to produce documents and were involved, on a daily basis, in depositions defendants did not offer to produce any portion of the log. Rather, defendants waited until after the close of business on March 20, 1995, nearly three weeks after service of the response to the requests, and only two weeks before trial was scheduled to commence before producing any type of privilege log. Considering the discovery schedule of the parties, the trial setting and the prior filing of the motion to compel, the production of the log was untimely.

(Dk. 100 at 7–8). The magistrate judge also found that the defendants' privilege log was inadequate to sustain their burden of proof. Criticism was taken with the defendants' failure to describe fully the authors and recipients, to specify whether the claim was attorney-client privilege [1] or attorney work product, and to identify the nature of the documents. The magistrate judge noted that the size of the defendants' log was not consistent with the defendants' arguments regarding their burden and delay in producing the log. The magistrate judge gave the defendants until 10:00 a.m. the next day, March 31, 1995, to file by facsimile any motion for reconsideration or review.

The defendants timely filed their motion to reconsider arguing that their own lack of culpability and the lack of prejudice to the plaintiff militated against such extreme relief as losing their asserted privilege. The defendants submitted with their motion and memoranda the affidavit from a legal assistant recounting the monumental work of document production completed within a short period of time and an amended privilege log curing many of the deficiencies earlier noted by the magistrate judge. (Dks. 104 and 110). Finally, the defendants referred to changed circumstances, including the postponement of trial, as reasons for reconsideration.

In his order of June 12, 1995, the magistrate judge addressed each of the defendants' points. He first rejected the defendants' arguments on prejudice as not having been raised in their initial response to the plaintiff's motion to compel. Additionally, the magistrate judge found prejudice to the plaintiff flowing from the lost opportunity to question deponents about different entries on the privilege log. As for the prejudice to the defendants, the magistrate judge expressed the opinion that his order minimized the chances that the defendants will be prejudiced in other litigation by the waiver of the privilege in this case. As for the defendants' amended privilege log, the magistrate judge refused to consider it, as it was untimely and outside the scope of matters proper for reconsideration. The new trial date was not significant to the magistrate judge for the discovery deadlines had not been extended. The magistrate judge gave little weight to the defendants' arguments regarding the extreme burdens of document discovery in this case:

> Each case must be considered on its own merits in light of the discovery schedule established by the court. What may be considered timely in a case where six months is allowed for discovery, will be considered untimely when only one or two months is allowed. Defendants, aware of the exigencies of the discovery schedule and the pendency of the trial schedule, had an obligation to proceed accordingly. Of

---

1. The plaintiff likewise failed to disclose on it's privilege list provided on March 6, 1995, wheth-

er the claim was attorney-client privilege or the work-product doctrine. (Dk. 51, Ex. 2).

significance herein is the defendants' complete failure to produce a privilege log of any type for a period of approximately two weeks and until the motion to compel was filed. There is no evidence that a privilege log would have ever been provided but for the filing of the motion to compel. Further, the privilege log now submitted by the defendants is only four pages long and includes only sixteen documents, all of which were apparently withheld at the time of the production of the documents and could easily have been identified with a log provided to counsel by a few minutes of dictation.

(Dk. 156 at 7). The magistrate judge saw the defendants' arguments blaming the plaintiff for the late privilege log as "totally without merit." Finally, the magistrate judge emphasized that though the attorney-client privilege was highly valued in our jurisprudence the burden remains with the producing party to assert it.

## RELEVANT LAW AND ANALYSIS

■ Rule 26(b) of the Federal Rules of Civil Procedure limits the scope of discovery to "any matter, not privileged, which is relevant to the subject matter involved in the pending action." (emphasis added). This limit, however, "is not self-executing." *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir.1991). The party asserting a privilege or the work-product doctrine as a bar to discovery has a two-fold burden. First, the party must present the privilege objection "in a timely and proper manner." *Id.* Second, the party must show the privilege is applicable. *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir.1984). In short, "[t]he applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document." *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984), *cert. dismissed*, 469 U.S. 1199, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985).

The Federal Rules of Civil Procedure spell out the requirements for a timely and proper privilege objection. Rule 34(b) requires the producing party on a request for production of documents to serve a written response within 30 days after service of the request or within a longer or shorter period set by the court or agreed to by the parties. In its response, the producing party must state whether it assents or objects to the request and the reasons for any stated objection. As amended in 1993, Rule 26(b)(5) specifies what a producing party must provide when the objection is based on privilege or the work-product doctrine:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Rule 26(b)(5) plainly contemplates that the required notice and information is due upon a party withholding the claimed privileged material. Consequently, reading Rules 26(b)(5) and 34(b) together, the producing party must provide the Rule 26(b)(5) notice and information at the time it was otherwise required to produce the documents under Rule 34.

■ When a producing party fails to make a timely and proper objection, a court may find that the party has waived any objections to a document request under Rule 34. *Marx*, 929 F.2d at 12; *Scaturro v. Warren and Sweat Mfg. Co., Inc.*, 160 F.R.D. 44, 46 (M.D.Pa.1995); *McEwen v. Digitran Systems, Inc.*, 155 F.R.D. 678, 681 n. 2 (D.Utah 1994); 4A James W. Moore et al., *Moore's Federal Practice* ¶ 34.05[2] (1995). Even when the untimely objection is based on privilege, the court likewise may find a waiver. *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981); *United States v. 58.16 Acres of Land, Clinton County, Ill.*, 66 F.R.D. 570, 572 (E.D.Ill.1975); *see* 8 Charles A. Wright, et al., *Federal Practice and Procedure* § 2016.1 at 230–31 (1994) ("Some courts state that such a log must be delivered within the time limits for filing a discovery response and that failure to list a document works a waiver." (footnote omitted)). The Advisory Committee Notes to the 1993 Amendments

of Rule 26 reveal that waiver was a contemplated remedy for non-compliance with Rule 26(b)(5):

> Paragraph (5) is a new provision. A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.

■ Still, waiver does not automatically result from noncompliance with Rule 26(b)(5). *Queen's Univ. at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, 446 (D.Kan. 1995); *Cunningham v. Connecticut Mut. Life Ins.*, 845 F.Supp. 1403, 1408 (S.D.Ca. 1994); *B. Braun Med. Inc. v. Abbott Labs.*, No. 93–3883, 1994 WL 422287, at *1–2, 1994 U.S.Dist. LEXIS 9445, at *3–*4 (E.D.Pa. July 13, 1994). Neither Rule 26(b)(5) nor Rule 34(b)[2] mandate waiver upon a party's failure to object. Nor do the local rules of this court provide that a party waives those objections not timely or properly made.

■ As the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith. The 1993 advisory committee notes to Rule 26(b)(5) speak only of the possibility of a waiver when a party withholds materials without proper notice. Rule 37(d) provides, in part:

> The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c).

The effect of Rule 37(d) is that a party waives its discovery objections by seriously disregarding its discovery obligations as described in subdivision (d). Those described acts are where a party fails to appear for deposition, to answer interrogatories, or to respond to a request for inspection. Rule 37(d) is concerned with complete failures to respond not just incomplete or inadequate attempts. 8A, Charles A. Wright, et al., *Federal Practice and Procedure* § 2291 (1994). Rule 37(d) implicitly stands for the notion that the sanction of waiver is best suited for the more serious discovery violations.

When stated in the case law, the rule on waiver commonly appears as follows:

> The failure to object to a discovery request in a timely fashion may constitute a waiver of the objection. (Citation omitted). However, it is within the Court's discretion not to compel discovery which is patently improper. Courts generally consider the reasons for the failure to respond to a discovery request and reserve the harshest sanctions only for the most flagrant violations. (Citation omitted). The principle that the failure to timely object to a discovery request constitutes a waiver of the objection has been applied with particular regularity when the objections relate solely to the relevance or burdensomeness of the discovery requests. (Citation omitted).

*Eastern Technologies, Inc. v. Chem–Solv, Inc.*, 128 F.R.D. 74, 75 (E.D.Pa.1989) (quoting *Boselli v. Southeastern Pennsylvania Transportation Authority*, 108 F.R.D. 723, 726 (E.D.Pa.1985)); *see Eureka Financial v. Hartford Acc. & Indem.*, 136 F.R.D. 179, 185 (E.D.Cal.1991). The courts have been more circumspect in finding a waiver of a privilege objection. *See, e.g., Queen's Univ. at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, 447 (D.Kan.1995) ("[I]n the instant case, waiver would be an especially harsh sanction. . . ."); *Godsey v. United States*, 133 F.R.D. 111, 113 (S.D.Miss.1990) (Though an untimely privilege objection may be waived, "the more advisable and prudent course is to sanction the plaintiff's attorneys. . . ."); *Eastern Technologies, Inc.*, 128 F.R.D. at 75 ("[G]iven the specific circumstances of this individual case, the failure to object [on the basis of a privilege] is not such a 'flagrant violation' as

---

**2.** "Rule 34 does not by its terms provide that objections will be deemed waived; rather, a waiver appears to be more in the nature of a

sanction for more egregious conduct." *Scaturro v. Warren and Sweat Mfg. Co., Inc.*, 160 F.R.D. 44, 46 (M.D.Pa.1995).

to warrant 'the harshest sanction.'") One leading treatise comments on this practice:

Some courts state that such a [privilege] log must be delivered within the time limits for filing a discovery response and that failure to list a document works a waiver. Courts even have stated that, in order to preserve the privilege, it may additionally be necessary to move for a protective order.

Pushed to the limit, these propositions could impose substantial and unjustified burdens on litigants. In most of the instances where the courts have taken a seemingly harsh attitude toward the need for immediate details, however, it appears that the offending party was guilty of unjustified delay in responding to discovery. In other circumstances more measured responses are appropriate....

. . . .

... The basic objective [of the notice requirement in Rule 26(b)(5)] is a sufficient description of the matters withheld to satisfy the needs of the case; rigid insistence on certain logging or indexing procedures may go well beyond that, particularly in larger cases. Unless there has been a bad-faith failure to comply with a reasonable identification effort, automatically finding a waiver of the privilege would be unduly harsh, as some courts have already recognized.

8 *Federal Practice and Procedure* § 2016.1 at 231–32, 234–35 (footnotes omitted).

Courts have looked to various factors in deciding if a party waives a privilege objection by not asserting it in a timely and proper manner. Some courts have adapted the factors used in inadvertent waiver cases:

(1) the precautions taken to properly assert the privilege, (2) the time taken to rectify the error, (3) the scope of discovery, (4) the extent of the objection or claim of privilege, and (5) overriding issues of fairness.

*Cunningham v. Connecticut Mut. Life Ins.*, 845 F.Supp. at 1409; *Eureka Financial*, 136 F.R.D. at 184. These five factors, liberally construed, arguably encompass the factors found particularly relevant in other cases. For example, courts have decided against waiver when there has been minor procedural violations, good faith attempts at complying, and some notice to opposing party of the privilege objections, *see, e.g., B. Braun Med. Inc. v. Abbott Labs.*, No. 93–3883, 1994 WL 422287, at *1, 1994 U.S.Dist. LEXIS 9445, at *3; *Eastern Technologies, Inc.*, 128 F.R.D. at 76; when a party because of oversight fails to list a privileged document in a case involving a vast quantity of documents, *Butler Mfg. Co., Inc. v. Americold Corp.*, 148 F.R.D. 275, 277 (D.Kan.1993); and when the nature of the requested documents shows them to be plainly protected by the work product doctrine and/or the attorney-client privilege, *Queen's Univ. at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, 447; *Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665, 687 (D.Kan.1989). It deserves emphasizing that each case is decided on its own facts, and the presence or absence of any one or more of these factors does not compel a particular result.

In balancing the different factors, the court should account for the nature and value of the privilege and protection against which waiver is being sought. On the matter of the attorney-client privilege, the Supreme Court has said:

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client.

*Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981) (*quoted in Great Plains Mut. Ins. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 196 (D.Kan.1993)). With regard to the work-product doctrine, Justice Jackson has commented:

[A] common law trial is and always should be an adversary proceeding. Discovery

was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary.... I can conceive of no practice more demoralizing to the Bar than to require a lawyer to write out and deliver to his adversary an account of what witnesses have told him.

*Hickman v. Taylor,* 329 U.S. 495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947) (Jackson, J., concurring) (*quoted in Smith v. MCI Telecommunications Corp.,* 124 F.R.D. at 686). Since both are highly valued in our judicial system, a court should give due consideration to the different factors before deciding that one or both were waived upon a procedural default.[3]

 Before discussing the different factors, the court wants to comment briefly on expedited discovery. Expedited discovery requires more from everyone. From the discovering party, it demands a receptive attitude and a discerning and sparing use of discovery tools. From the producing party, it requires an indulgent attitude and punctual and straightforward discovery responses. Both sides must compromise those expectations that are attainable only through a normal discovery schedule. The success of expedited discovery depends significantly on informal cooperation and communications between the parties. Because an expedited schedule adds significant pressures to the discovery process, more errors and oversights are an inevitable result. For this reason, the court supervising expedited discovery often will have a choice between tolerating the oversight or enforcing the schedule or rule. Striking the appropriate balance between a firm schedule and a fair and full opportunity for discovery is a matter over which the discovery judge has much discretion.

 The failure to assert the privilege here is owing first to the defendants' untime-

liness in turning over a privilege log and second to the defendants' inadequate and incomplete privilege log produced on March 20, 1995.[4] It is true that the defendants' conduct departs from what is expected and required under the federal rules, but is it so unreasonable as to justify forfeiting their privilege? The defendants' blanket objection on privilege and work product qualifies as some precaution for it provides notice to the plaintiff that documents are being withheld on privilege grounds, but this is not enough for Rule 26(b)(5) purposes. The defendants, however, are able to point to other mitigating circumstances. First, during the limited time that they had for preparing a privilege log, the defendants also were engaged in locating and reviewing a vast number of documents from many different locations and offices and from periods that predated many of the defendants' current employees. Second, during the eight days between the plaintiff's requests for the privilege log and the plaintiff's filing of the motion to compel, the defendants were involved with taking or defending in this case over twenty-two depositions including depositions of their top officers and principal trial witnesses. Of course, the more prudent practice would have been to first discuss the matter with the plaintiff and then, if necessary, to prepare and file extension requests or seek a protective order. Still, these mitigating circumstances keep this factor from strongly favoring a waiver of privilege.

The court considers the defendants to have acted promptly in curing their error. The defendants filed a response the next day to the plaintiff's motion to compel and committed to providing a privilege log on the following business day. The defendants provided the log on that day as promised which was before the discovery hearing took place. After the magistrate judge ruled that the privilege log was inadequate in several respects, the defendants filed an amended privilege

---

3. When the privilege waiver issue comes before the district court on review of a magistrate judge's ruling, the district courts adds to the balance of factors the deference owed the magistrate judge. *See Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 686 (D.Kan.1989).

4. In fairness to the defendants, the court will consider all arguments and evidence submitted initially and on reconsideration. It seems unduly harsh to employ the strict rules governing a motion to reconsider when a party had only one day to prepare and file its initial memorandum and supporting documents.

log, again on the next day, attempting to cure those deficiencies. The delay between the plaintiff's requests and the defendants' privilege log can be tolerated for two reasons. The delay was not more than eight business days after the plaintiff's second request. Throughout this same period, the defendants were actively engaged in an extraordinary effort to locate and produce a vast number of documents responsive to the plaintiff's broad request and in preparing for numerous depositions. This factor does not support a finding of waiver.

The plaintiff's document request was quite broad. It is fair to say that it created a burden that the defendants were unlikely to meet within the shortened response time. Even so, the defendants at great expense in time and money made a good faith attempt at meeting the accelerated discovery deadlines. They apparently produced most of the requested documents which number many times over those produced by the plaintiff. While the defendants' privilege logs are not lengthy, the defendants logically insist the arduous work of reviewing the many boxes of documents is not necessarily reflected in the number of privilege objections. From all of these circumstances, as documented by the defendants' affidavits, the court reasonably infers that the defendants acted not on an intent to avoid discovery obligations but in an effort to use their limited time and resources to keep up with the expedited discovery schedule. The court appreciates that the pressures of an expedited schedule may force a party to set priorities on the time and resources spent on competing discovery obligations. Still, a party facing this situation has procedural relief available to prevent a default on discovery obligations. On the whole, the extreme discovery burden carried by the defendants here suggests that waiver of the privilege objection would be an unduly harsh sanction.

The defendants' initial objection on privilege and work product was a general one, but the objection did not halt or obstruct the scheduled pending discovery. There is no showing that in the depositions taken between March 7, 1995, and March 20, 1995, the plaintiff asked questions about other possible documents and drew a general privilege or work product objection. This factor does not weigh in favor of waiver.

The fairness factor comprises several different considerations beginning with the prejudice to the plaintiff. The ostensible prejudice is that without the privilege log the plaintiff lost the chance to depose the defendants' principal witnesses about the documents and to determine from that testimony whether the privilege or protection was being properly asserted. The plaintiff, however, does not identify how many depositions fit this situation and which documents from the current privilege list are arguably appropriate for such questioning. Without such specifics, it is difficult to know the degree of any prejudice to the plaintiff, to balance the prejudice against that suffered by the defendants, or to assess whether the prejudice could be cured with a lesser sanction.

Before a federal district court in Kansas will entertain a motion to compel production pursuant to Rule 37(a), counsel for movant must first confer or make reasonable efforts to confer with opposing counsel concerning the discovery matter in dispute. D.Kan. Rule 210(j). The moving party's counsel must file a certificate of compliance with this local rule provision. *Id.* Not unlike many similar rules in other districts, this rule serves "to lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants, through promotion of informal, extrajudicial resolution of discovery disputes." *Nevada Power Co. v. Monsanto Co.,* 151 F.R.D. 118, 120 (D.Nev.1993) (citations omitted); *see Halas v. Consumer Services, Inc.,* 16 F.3d 161, 165 (7th Cir.1994) ("The intent of . . . [District of Indiana's local rule] is to require parties to make a good faith effort to resolve discovery disputes informally, outside of court, without invoking judicial intervention.") If this rule is to work, the conference requirement must be treated "as a substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes." *Nevada Power Co.,* 151 F.R.D. at 120. Towards that end, the parties should confer with the same detail and candor expected in the memoranda they

would file with the court on the discovery dispute. *Id.*

The plaintiff's counsel's actions violate the spirit, if not the literal terms, of D.Kan. Rule 210(j). Eight business days before filing the motion to compel, the plaintiff's counsel twice asked for a privilege log. Both requests were made over a single twenty-four hour period. The first was a letter in which the plaintiff's counsel wrote on three matters with one being his presumption that the defendants would provide a privilege log the next morning. The second request was made the next morning to a younger attorney who was not involved in document production and who apparently had done little in the case prior to defending the deposition that morning. Both appear to be pro forma requests intended more to make a record than to resolve a dispute. Indeed, the plaintiff passed on later opportunities to discuss the privilege log with the defendants' senior attorneys. Over the two days following the second request, the plaintiff and the defendants' senior attorneys were together for four depositions, and the plaintiff never mentioned the privilege log issue. Had the issue been openly and fully discussed among the senior attorneys responsible for the case, it seems quite reasonable to expect that a workable resolution would have been reached. The possibility of prejudice could have been minimized by an agreement either to produce a partial privilege list for those witnesses immediately scheduled for deposition or to delay certain depositions until the relevant privilege lists were completed. This is not to say that the plaintiff is to blame for the defendants' failure to produce a timely and adequate privilege log. But it is fair to say that the plaintiff is not blameless for the prejudice it may suffered from not having a privilege list to use in the depositions taken between March 7th and March 20th.

According to the defendants, they will suffer extreme prejudice from the waiver of this privilege. Besides divulging to this plaintiff what appears to be protected information, the defendants now face the risk that other courts in related litigation will find a waiver of the same privilege based upon these proceedings. The likelihood of related litigation against the defendants in other forums is relatively high. The defendants were sued in Nebraska by a bank claiming exclusive rights in the name "First Bank" and have been threatened with suit by another bank on the same grounds. The court is not certain that the language included by the magistrate judge—"this order shall not be construed as a waiver of the attorney-client privilege by defendants for purposes of litigation other than the instant litigation"—will protect the defendants in the other litigation. The magistrate judge's ruling necessarily depends on a finding that the defendants impliedly waived their privilege and protection by not timely providing adequate notice under Rule 26(b)(5). It is not clear that another court must accept that finding of an implied waiver on the limiting conditions stated in that order.

The balance of prejudice does not lean towards a waiver. The prejudice to the plaintiff from not having the privilege log during eight business days of discovery can be stated in general terms, but the degree of any prejudice remains more a matter of speculation than proof. An opportunity to minimize this prejudice was lost when the plaintiff did not meaningfully confer regarding this dispute. Another such opportunity was lost when the trial date was continued and discovery concerning the amended privilege log was not ordered at the defendants' expense. A quick review of the defendants' amended privilege log shows a number of documents plainly meeting the definition of work product and/or qualifying for the attorney-client privilege. The prejudice from disclosing this information to the plaintiff is compounded by the risk that the defendants now may be forced to divulge the same information in other litigation. For these reasons, the court considers the defendants' prejudice to outweigh that suffered by the plaintiff.

In sum, the court is of the opinion that the compelling weight of the different factors comes down against imposing a waiver of the defendants' attorney-client privilege and work-product protection. The court, therefore, sets aside the magistrate judge's orders of March 30, 1995, and June 12, 1995. Be-

cause of the broad discretion that resides with the magistrate judge to manage the pretrial docket and to control discovery, the court is quite reluctant to enter this order. Were it not for the critical facts that the defendants faced an extraordinary burden in producing the documents to satisfy the plaintiff's broad request and the expedited discovery schedule and that the waiver poses a serious litigation risk to the defendants in other cases that have been or are likely to be filed, the court would summarily affirm the magistrate judge's decision.[5]

This ruling plainly complicates the current trial schedule. Despite the advanced stages of this case, the court does not want to prevent the plaintiff from bringing any substantial challenges to the documents found on the defendants' first and amended privilege logs. The court directs the parties to meet immediately and confer over the defendant's privilege logs in an effort to agree on whether the privilege objections should stand and, if so, whether the asserted privilege outweighs the plaintiff's need for the information. If an agreement cannot be reached, the parties shall contact the court by a conference call to see what arrangements can be reached for promptly resolving the disputed objections.

IT IS THEREFORE ORDERED that the defendants' objections (Dk. 178) and request for reconsideration (Dk. 109) are granted, and the magistrate judge's orders filed June 12, 1995, (Dk. 156) and March 30, 1995 (Dk. 100) are set aside.

---

**5.** The court echoes Judge O'Connor's concerns when he reversed a magistrate judge's ruling on the waiver of the attorney-client privilege:

"In fact we wish to explicitly state that this portion of the court's order is, in our opinion, of little or no precedential value. By no means are we inviting other litigants to move this court to reconsider the magistrate's numerous discovery orders denying objections which are timely asserted. Our practice will remain to summarily deny such motions in all but the most unusual instances."

*Smith v. MCI Telecommunications Corp.,* 124 F.R.D. at 687 n. 16.